UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ALEX O. MERCADO,**

      Plaintiff,

v.                              Case No: 6:23-cv-792-EJK

**ADISER ORLANDO LLC, JUAN CARLOS PEDRAGLIO, and ANDERSON PINHEIRO,**

      Defendants.

## ORDER

This cause comes before the Court on the parties' Joint Motion for Approval of Settlement Agreement and Dismissal of Case with Prejudice (the "Motion"), filed August 21, 2023. (Doc. 18.) For the reasons set forth below, the Motion is due to be denied without prejudice.

**I.    BACKGROUND**

On April 28, 2023, Alex O. Mercado ("Plaintiff") filed this collective action against Adiser Orlando LLC, d/b/a Burger King ("Adiser"), Juan Carlos Pedraglio, and Anderson Pinheiro ("Defendants"), alleging Defendants violated the unpaid minimum wage and retaliatory discharge provisions of the Fair Labor Standard Act of 1938 ("FLSA"), 29 U.S.C. §§ 201-219, 206(a)(1), 215(a)(3), 516. (Doc. 1 ¶¶ 1, 6, 24, 36, 41, 68.) Adiser is a fast-food franchise company that operates a Burger King

restaurant. (*Id.* ¶ 9.) Juan Carlos Pedraglio and Anderson Pinheiro are the owners of Adiser. (*Id.* ¶ 4.)

Plaintiff worked for Adiser full-time as a cook from February 9, 2023, to March 3, 2023. (*Id.* ¶ 4.) Plaintiff was supposed to be paid an hourly rate of $12.00. (*Id.* ¶ 11.) Despite working Monday to Friday, from 6:00 PM to 12:30 AM,[1] for a minimum of 32.5 hours weekly each week Plaintiff was employed, Plaintiff alleges he was paid one check for $332.00 and did not receive any other compensation. (*Id.* ¶¶ 12, 32–37.) Plaintiff further alleges that the one check he received for $332.00 was a bad check that his bank flagged as fictitious, causing the bank to close Plaintiff's account. (*Id.* ¶ 32) After Plaintiff was unable to cash the bad check, Plaintiff alleges that he complained to a superior and was fired on March 3, 2023. (*Id.* ¶¶ 60–66.) Lastly, Plaintiff alleges that Defendants never posted any notice informing employees of their rights to overtime and minimum wage payments, as required by FLSA and federal law. (*Id.* ¶ 41.)

Defendants denied liability for Plaintiff's claim. (Doc. 12.) However, Plaintiff and Defendants negotiated a compromise and settlement of Plaintiff's claims and filed a motion for approval of their settlement agreement (the "Agreement") (Doc. 18-1), pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982). (Doc. 18.)

---

[1] Typographical error omitted.

## II.   STANDARD

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." *Barrentine*, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

The parties seek judicial review and a determination that their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. *See Lynn's Food Stores*, 679 F.2d at 1354–55. If a settlement is not supervised by the Department of Labor, the only other route for compromise of FLSA claims is provided in the

context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. *Id.* at 1353. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

When evaluating an FLSA settlement agreement, the district court considers both whether the settlement is fair and reasonable to the employee, or "internal" factors, and whether the settlement frustrates the purpose of the FLSA, or "external" factors. *Dees v. Hyrdradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–51 (M.D. Fla. 2010). Factors considered

"internal" include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Hamilton v. Frito-Lay, Inc.*, No. 6:05-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." *Id.* (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)).[2]

## III. DISCUSSION

There are multiple issues that affect the Court's ability to determine whether the Agreement is a fair and reasonable settlement of Plaintiff's FLSA claims.

### A. General Release

Paragraph 5 of the Agreement is titled: "General Release and Waiver of All Claims." (Doc. 18-1 § 2 ¶ 5.) Specifically, paragraph 5 states that "[i]n exchange for the consideration provided above in Paragraph 1, the parties agree to settle, release and waive any and all claims each has or may have against the other" (the "Release"). (*Id.*) Additionally, the Release extends to entities that are not parties to the action, and Paragraph 5 provides a release of claims arising under or based upon a comprehensive list of various state and federal acts, statutes, ordinances, contract, quasi-contract, tort, and common law claims subject to the release. (*Id.* § 2 ¶ 5.)

---

[2] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding all decisions from the Fifth Circuit handed down prior to October 1, 1981 are binding on the Eleventh Circuit).

Judges in this District have previously held that a plaintiff may release "wage-and-hour or related claims that arise out of the facts alleged in the instant action," but that such a release is ineffective as to any wage-and-hour or related claim that a plaintiff may have arising out of *unrelated* facts or circumstances. *Coleman v. Target Corp.*, No. 6:12-cv-1315-37GJK, slip. op. at 2 (M.D. Fla. Mar. 6, 2013). "[A] general release of unknown claims in the context of an FLSA settlement, absent specific justification, is not consistent with a fair and reasonable resolution." *Id.* (citing *Bright v. Mental Health Res. Ctr., Inc.*, No. 3:10-cv-427, slip. op. at 9 (M.D. Fla. Mar. 14, 2012)).

Here, the Release goes well beyond claims for unpaid wages and hours, or related claims arising out of the same facts or circumstances as those in the instant action. Additionally, the Release is bestowed upon a host of individuals and entities described in Paragraph 5, including unnamed past, present and future agents, assigns, insurers, representatives, counsel, benefit plan administrators, other administrators, successors, parent companies, subsidiaries, shareholders, members and/or directors. (Doc. 18-1 § 2 ¶ 5.) The Release runs afoul of the FLSA because it attempts to release claims unrelated to those presented by Plaintiff's Complaint without justification or a specified amount of additional compensation.

These deficiencies may be remedied through separate consideration that adequately compensates Plaintiff for matters that exceed the scope of what is permissible in an FLSA settlement agreement. *See Landfair v. Optimal Phone Interpreters, Inc.*, No. 6:12-cv-1747-Orl-37DAB, 2013 WL 12388629, at *3 (M.D. Fla. June 20,

2013) ("[T]he existence of a separate agreement settling . . . non-FLSA claims, with separate consideration paid, [is not] an impediment to the FLSA settlement.") However, the consideration provided in Paragraph 1C, "[a] check payable to plaintiff in the sum of $2,855.00 representing additional and separate consideration for Plaintiff's alleged retaliatory discharge damages under the FLSA, as well as for the release of claims as set forth in this agreement[,]" does not allow the Court to distinguish between the amount of separate consideration being provided in exchange for release of Plaintiff's retaliatory discharge claim under the FLSA versus that provided in exchange for the Release. (*Id.* § 2 ¶ 1C.) Therefore, the Motion is due to be denied on this ground.

### B. Confidentiality

According to Section 2 Paragraph 7 of the Agreement "[t]he parties agree, promise, and covenant that the terms and provisions of this Agreement shall remain and be kept strictly confidential and shall not be disclosed . . . unless required to do so by law [and except] . . . to the [parties] respective attorneys, personal accountants, personal tax preparers or spouse." (Doc. 18-1 § 2 ¶ 7.) Courts throughout this circuit routinely reject FLSA settlement agreements containing confidentiality provisions. *Pariente v. CLC Resorts & Devs., Inc.*, No. 6-14-cv-615-Orl-37, 2014 WL 6389756, at *5 (M.D. Fla. Nov. 14, 2014). This is because confidentiality provisions are at odds with the purpose behind the FLSA and are inherently unenforceable due to the fact that the underlying settlement agreement is filed on a public docket. *See Id.* (noting confidentiality clauses "thwart Congress's intent to ensure widespread compliance

with the FLSA") (quotation omitted); *Housen v. Econosweep & Maint. Servs., Inc.*, No. 3:12-cv-461-J-34TEM, 2013 WL 2455958, at *2 (M.D. Fla. June 6, 2013) (acknowledging that confidentiality provisions are "unenforceable due to the public filing of the agreements."). Therefore, the Motion is also denied on this basis.

### C. No Future Employment

The Agreement contains a no-rehire provision, which states, in pertinent part:

> Plaintiff agrees not to seek future employment with Defendants its parent companies, subsidiaries, corporate affiliates or successors. If Plaintiff inadvertently applies for employment, the existence of this Agreement shall constitute a legitimate, non-discriminatory reason for any employment decisions made by Defendants.

(Doc. 18-1, § 2 ¶ 9.)

This type of restrictive provision is generally disfavored by courts because it is viewed as punishing the plaintiff for exercising his rights under the FLSA. *See, e.g.*, *Rosado v. Melao Bakery LLC*, No. 616-cv-1060-Orl-41KRS, 2017 WL 2643982, at *4 (M.D. Fla. May 17, 2017), *report and recommendation adopted*, 2017 WL 2634795 (M.D. Fla. June 19, 2017) (discussing general disfavor of no rehire provisions and striking no-rehire provision as there was no indication plaintiff was receiving separate consideration); *Owens v. SSRMI, LLC*, No. 5:16-cv-15-Oc-40PRL, 2017 WL 2190646, at *3 (M.D. Fla. Apr. 28, 2017) (citing *Nichols v. Dollar Tree Stores, Inc.*, No. 1:13–CV–88 (WLS), 2013 WL 5933991, at *6 (M.D. Ga. Nov. 1, 2013)), *report and recommendation adopted*, 2017 WL 2172089 (M.D. Fla. May 17, 2017). The parties have

not provided any explanation as to why the no-rehire provision is fair and reasonable, nor why other parties, in addition to Defendants, are subject to the no-hire provision. Absent an explanation for the no-rehire provision, the Court cannot evaluate the fairness of this provision.

IV. **CONCLUSION**

Upon consideration of the foregoing, it is hereby **ORDERED** that the parties' Joint Motion for Approval of Settlement Agreement and Dismissal of Case with Prejudice (Doc. 18) is **DENIED WITHOUT PREJDUICE**. The parties may file a renewed motion, along with their settlement agreement, **on or before October 18, 2023**.

**DONE** and **ORDERED** in Orlando, Florida on October 4, 2023.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE